UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
GREEN TREE SERVICING LLC,

                Plaintiff,

         -against-

NICHOLAS CHRISTODOULAKIS,
ALEXANDRA CHRISTODOULAKIS, and
OLGA CHRISTODOULAKIS,

                Defendants.
----------------------------------------------------------X

**ORDER**
14-cv-2037(SJF)(SIL)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ OCT 28 2014 ★
LONG ISLAND OFFICE

FEUERSTEIN, District Judge

      On March 31, 2014, plaintiff Green Tree Servicing LLC ("plaintiff") commenced this action against Nicholas Christodoulakis ("Nicholas"), Alexandra Christodoulakis ("Alexandra") and Olga Christodoulakis ("Olga") (collectively, "defendants") pursuant to this Court's diversity jurisdiction under 28 U.S.C. § 1332, seeking (1) to recover on a promissory note executed by Olga in favor of Bank United, FSB ("Bank United"), plaintiff's assignor; and (2) damages for defendants' fraud, unjust enrichment and breach of warranty of title.

      On August 1, 2014, this Court, *inter alia*, granted plaintiff's *ex parte* application under Section 6211(a) of the New York Civil Practice Law and Rules ("CPLR") for an order of attachment of defendants' real and personal property to secure the sum of two hundred forty-five thousand four hundred ninety-eight dollars and thirty-eight cents ($245,498.38) and directed plaintiff to move, on notice, under Section 6211(b) of the CPLR for an order confirming the order of attachment within five (5) days of any levy against defendants' real or personal property by the Sheriff. On August 6, 2014, the Sheriff of the County of Suffolk levied upon real property

1

owned by Nicholas and Alexandra in Dix Hills, New York, (see Affirmation of Michael J. Siris, Esq. ["Siris Aff."], Ex. A), and plaintiff timely filed its motion to confirm the order of attachment on August 7, 2014. For the reasons set forth below, plaintiff's motion to confirm the order of attachment is granted.

I.   BACKGROUND

   A.   Factual Allegations

Plaintiff is a Delaware corporation with is principal place of business in Rapid City, South Dakota, and is the holder and/or assignee of all right, title and interest in and to a mortgage and accompanying note in the amount of three hundred eighty-five thousand dollars ($385,000.00), both executed by Olga in May 2008 in favor of Bank United. (Complaint ["Compl."], ¶ 3).

Nicholas and Alexandra are spouses, Olga is their daughter and all of them reside at the same address in Dix Hills, New York, (Compl., ¶¶ 3-5), owned by Nicholas and Alexandra since 1987. (Siris Aff., Ex. O).

By deed dated December 14, 1979, which was recorded on December 18, 1979, Nicholas and Alexandra acquired title to premises located at 2022 Mill Avenue, Brooklyn, New York ("the Premises"). (Compl., ¶ 7).

On or about October 22, 2003, Nicholas and Alexandra borrowed three hundred thousand dollars ($300,000.00) from New Century Mortgage Corporation ("New Century"), secured by a mortgage on the Premises ("the 2003 Mortgage"), and accompanying note, which were recorded on January 26, 2004. (Compl., ¶ 8; Siris Aff., Ex. D).

2

By quitclaim deed dated April 10, 2008, which was recorded on May 9, 2008, Nicholas and Alexandra conveyed, for no consideration, the Premises to themselves and Olga as tenants in common. (Compl., ¶ 9; Siris Aff., Ex. E). Alexandra asserts, by way of explanation, that in early 2008, she and Nicholas "sought to refinance [their] then existing mortgage, and to take additional cash out, * * * [and] were initially seeking to borrow [] approximately $350,000[,]" (Affidavit in Opposition of Alexandra Christodoulakis ["Alexandra Aff."], ¶ 5), but were told by an unidentified person "that in order to obtain the refinance mortgage [they] would need to sign the deed conveying the property from [Nicholas] and [her] jointly, to [Nicholas], [her] and [Olga] jointly[,]" (id. ¶ 8), which they did without objection. (Id.)

Alexandra asserts that less than one (1) month later, she and Nicholas were told "that the ownership [of the Premises] would have to be change [sic] again, this time conveyed by the three of us to [Olga] alone[,]" (Alexandra Aff., ¶ 8), so they "executed the deed effectuating that transfer, and delivered it to the [unidentified] Title Company at the Closing table, again asking no questions but simply complying with the requirements of the bank, as conveyed to us by the [unidentified] mortgage broker[.]" ( Id.) (emphasis omitted). By deed dated May 22, 2008 ("the May 2008 Deed"), defendants conveyed the Premises to just Olga. (Compl., ¶ 10; Affidavit of Olga Christodoulakis ["Olga Aff."], ¶ 5). According to Olga, she delivered the May 2008 Deed to the unidentified title company at the closing, "together with all the fees necessary to record it[.]" (Olga Aff., ¶ 5). According to Alexandra, "by the time [they] reached the closing, [they] were told that [what] [they] had thought to be a simple refinance mortgage which would net [them] $350,000 * * * had now converted into the charade of a sale of the property from [Nicholas] and [her] to [Olga] for $550,000 part of which would be funded by the new $385,000

3

mortgage[.]" (Alexandra Aff., ¶ 8). Alexandra insists that "neither [Nicholas], [Olga], nor [she] did anything wrong, nor did [they] commit any conduct which could be characterized as fraudulent or inappropriate in any manner" with respect to the May 2008 sale of the Premises. (Alexandra Aff., ¶ 8).

On that same date, i.e., May 22, 2008, Olga borrowed three hundred eighty-five thousand dollars ($385,000.00) from Bank United ("the Bank United Loan"), (Compl., ¶ 11; Answer ["Ans."], ¶¶ 3, 4), secured by a mortgage on the Premises executed by Olga on May 12, 2008 and given to Mortgage Electronic Registration Systems, Inc., as nominee for Bank United ("the Bank United Mortgage"), and a note given by Olga to Bank United in the principal sum of the financed amount plus interest ("the Bank United Note"). (Compl., ¶ 11; Siris Aff., Exs. F, G and K, ¶ 2). The Bank United Mortgage and accompanying Note "provided that, in the event of a conveyance of the Premises, Olga was required to repay her indebtedness to [Bank United] (Plaintiff's assignor)." (Compl., ¶ 13). According to plaintiff, Bank United relied upon the May 2008 Deed "and the representations and covenants therein that the Premises were conveyed to and owned by [just] Olga" in entering into the loan transaction with Olga. (Id.) From the proceeds of the Bank United Loan, Bank United paid the sum of two hundred ninety-five thousand two hundred ninety-eight dollars and thirty-eight cents ($295,298.38)[1] to Countrywide Home Loans, which

---

[1] This amount is taken from the exhibits annexed to the Siris Affirmation, as the complaint alleges the amount to be two hundred forty-five thousand two hundred ninety-eight dollars and thirty-eight cents. ($245,298.38). (Compl., ¶ 12). Although the parties stipulated to amend the complaint, *inter alia*, to correct that amount in paragraph twelve (12) of the complaint, by electronic order dated October 10, 2014, the Honorable Steven I. Locke, United States Magistrate Judge, directed plaintiff to file "an Amended Complaint including the agreed-upon changes by 10/20/14." Since plaintiff did not comply with that electronic order, or seek an extension of time to do so, the allegations in the original complaint remain in effect.

4

was then holding and/or servicing the 2003 Mortgage, in full satisfaction of the 2003 Mortgage. (Compl., ¶ 12; Siris Aff., Exs. H and I). The May 2008 Deed was never recorded and the Bank United Mortgage was not recorded until May 28, 2013. (Compl., ¶ 14).

The Bank United Note "was physically delivered, surrendered, and conveyed to Plaintiff, along with all right, title, and interest in and thereto, upon service transfer to [Plaintiff] 4/1/2009." (Siris Aff., Ex. K, ¶ 3). "[W]hen Plaintiff obtained physical possession of the Note on the Delivery Date, the Mortgage followed as an incident thereto." (Id., ¶ 5).

By "Bargain and Sale Deed with Covenant against Grantors Acts" dated March 8, 2013 ("the Carter Deed"), defendants conveyed the Premises to Michael and Donna Carter ("the Carters"), (Compl., ¶ 16; Ans., ¶¶ 5, 6; Siris Aff., Ex. L), in exchange for three hundred fifty-four thousand dollars ($354,000.00) ("the Carter sale"), ostensibly free and clear of any mortgage since the 2003 Mortgage had been satisfied by Bank United from the proceeds of the Bank United Loan and the Bank United Mortgage had not yet been recorded. (Compl., ¶ 16). To finance their purchase of the premises, the Carters obtained a loan in the amount of two hundred eighty-three thousand dollars ($283,000.00) from Wells Fargo Bank, N.A. ("Wells Fargo"), secured by a mortgage on the Premises ("the Carter Mortgage"). The Carter Mortgage and the Carter Deed were recorded on or about March 28, 2013, (Siris Aff., Exs. L and M), "thereby effectively destroying the [Bank United] Mortgage * * *." (Compl., ¶ 19).

According to Olga, "[o]nly when [she] elected to sell the [Premises] in 2013 did [she] become aware that the [May 2008 Deed] had never been recorded." (Olga Aff., ¶ 9; see also Alexandra Aff., ¶ 9 ("[W]hen, some five years later, [Olga] sought to sell the property, she and [Nicholas and Alexandra] first learned that, contrary to [their belief], she was not the record

5

owner of the property alone, but, on record, still owned it jointly with [Nicholas and Alexandra].") Olga asserts that "[r]ather than to try to seek out the characters from the 2008 closing, and find out where the [May 2008] [D]eed was and try to retrieve it and record it then (which could have taken months, and might have caused [her] to lose a willing buyer), [she] chose the simpler and more expeditious path of simply having [her] parents sign the contract and the [Carter] [D]eed." (Olga Aff., ¶ 9). According to Olga, "[t]he property was [hers], the [Carter] sale was [hers], and the proceeds were [hers][,] [and] [t]he sum of approximately $100,000 [that she gave to her] parents at the closing was not because there [sic] were co-owners, but because [she] chose to give the[m] those finds [sic] to help them pay various debts, including debts owed to family members overseas." (Id., ¶ 11). According to Alexandra, "the only reason that [she and Nicholas] were involved in any respect in [Olga's] sale of the [Premises] in 2013 [] [was because] [their] signatures were required on the contract and the [Carter] [D]eed, as well as other closing papers, solely because the Title Company never recorded the [May 2008] [D]eed * * *." (Alexandra Aff., ¶ 9).

Olga further maintains that "the result of the title company's failure to record the mortgage, and the plaintiff's own negligence in buying a mortgage that was unrecorded was that [she]– not [her] parents– received the proceeds of the [Carter] sale without having to then pay off the unrecorded mortgage, since [she]– not [her] parents– sold the property and received the sale price form [sic] the buyers." (Olga Aff., ¶ 12). According to Alexandra, defendants only first learned in 2013 "that as of the time [Olga] sought to sell [the Premises], there was no Bank United mortgage open as of record." (Alexandra Aff., ¶ 10). Alexandra asserts:

"[a]dmittedly, neither [Nicholas] nor [she] (nor, to [her]

6

> knowledge, [Olga]), affirmatively initiated an investigation or
> inquiry into the absence of this recorded impediment to title in
> 2013. If that was wrongful in any respect, it would represent,
> chronologically, the first wrongful act of which [they] could be,
> and have been accused– in occurring [sic] 2013!"

(Id., ¶ 11) (emphasis omitted). Alexandra accuses plaintiff of being "grossly negligent" in acquiring a mortgage that had never been recorded. (Id., ¶¶ 14-15).

On March 11, 2013, Alexandra and Nicholas received a check in the amount of one hundred six thousand five hundred eleven dollars and three cents ($106,511.03) from Carone & Associates, PLLC, (Siris Aff., Ex. N), their attorneys during the Carter sale. (Id., ¶ 7). According to Alexandra, "[t]he only conduct on [her and Nicholas's] part which might be considered [a] wrongful act against the current plaintiff– if any at all– took place in 2013 and resulted in [their] receipt through the good graces of [Olga], of approximately $108,000." (Alexandra Aff., ¶ 16). Alexandra asserts that "[w]hether or not it is [her and Nicholas's] fault that [they] received this apparent windfall, and whether or not any of [their] conduct rose to a level which would make [them] legally liable to this plaintiff for the return of any such windfall, * * * the enrichment was limited to that $108,000, and * * * [t]hus, even if the prejudgment attachment is to be sustained, it should be limited to the amount of $108,000 * * *." (Id., ¶¶ 17-18).

In a less than three (3) week period immediately following the Carter sale, i.e., between March 11 and March 28, 2013, cash or certified check withdrawals totaling more than one hundred thousand dollars ($100,000.00) were made from a bank account held jointly by Alexandra and Olga at JP Morgan Chase ("the Alexandra/Olga account"). (Siris Aff., ¶ 7, Ex. N). Neither Alexandra nor Olga proffer any explanation for those withdrawals. Indeed, they do not

7

address those withdrawals in any way in their affidavits in opposition to the motion to confirm.

B.  Procedural History

On March 31, 2014, plaintiff commenced this action against defendants pursuant to this Court's diversity jurisdiction under 28 U.S.C. § 1332, seeking (1) to recover on the Bank United Note in the amount of three hundred eighty-five thousand dollars ($385,000.00) (first cause of action); and (2) damages for defendants' fraud (second cause of action), unjust enrichment (third and fourth causes of action) and breach of warranty of title (fifth cause of action).

On August 1, 2014, this Court, *inter alia*, granted plaintiff's *ex parte* application under Section 6211(a) of the CPLR for an order of attachment of defendants' real and personal property to secure the sum of two hundred forty-five thousand four hundred ninety-eight dollars and thirty-eight cents ($245,498.38) and directed plaintiff to move, on notice, under Section 6211(b) of the CPLR for an order confirming the order of attachment within five (5) days of any levy against defendants' real or personal property by the Sheriff. On August 6, 2014, the Sheriff of the County of Suffolk levied upon real property owned by Nicholas and Alexandra in Dix Hills, New York, (see Siris Aff., Ex. A), and plaintiff timely filed its motion to confirm the order of attachment on August 7, 2014. Defendants filed their opposition to the motion to confirm on September 29, 2014 and plaintiff filed its reply on October 2, 2014.

II.  DISCUSSION

Rule 64(a) of the Federal Rules of Civil Procedure provides, in relevant part, that "[a]t the commencement of and throughout an action, every remedy is available that, under the law of the

8

state where the court is located, provides for seizing * * * property to secure satisfaction of the potential judgment[,]" including the remedy of attachment. Fed. R. Civ. P. 64(b). "New York state law therefore governs this Court's evaluation of pre-judgment orders of attachment * * *." JP Morgan Chase Bank, N.A. v. Reijtenbagh, 615 F. Supp. 2d 278, 280 (S.D.N.Y. 2009); see also Silverman Partners, L.P. v. First Bank, 687 F. Supp. 2d 269, 293 (E.D.N.Y. 2010) (accord); DLJ Mortg. Capital, Inc. v. Kontogiannis, 594 F. Supp. 2d 308, 318 (E.D.N.Y. 2009).

Section 6211(b) of the CPLR provides, in relevant part, that "[u]pon the motion to confirm [an order of attachment granted without notice], the provisions of subdivision (b) of section 6223 shall apply." Thus, "the plaintiff [has] the burden of establishing the grounds for the attachment, the need for continuing the levy and the probability that he will succeed on the merits." N.Y. C.P.L.R. § 6223(b); see also Musket Corp. v. PDVSA Petroleo, S.A., 512 F. Supp. 2d 155, 160 (S.D.N.Y. 2007) ("CPLR §§ 6211(b), 6212(a), and 6223(b) require that the party seeking to confirm an order of attachment bears the burden of establishing the grounds for the attachment, the need for continuing the levy, and the probability for success on the merits."); Bank of China, N.Y. Branch v. NBM L.L.C., 192 F. Supp. 2d 183 186 (S.D.N.Y. 2002) (accord). In addition, Section 6212(a) of the CPLR requires the plaintiff "to demonstrate 'that there is a cause of action, that it is probable that the plaintiff will succeed on the merits, that one or more grounds for attachment provided in section 6201 exist, and that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff.'" JP Morgan Chase, 615 F. Supp. 2d at 280 (quoting N.Y. C.P.L.R. § 6212(a)); see also Silverman Partners, 687 F. Supp. 2d at 293 (accord), DLJ Mortg., 594 F. Supp. 2d 318-19 (accord). "To obtain an order of attachment, a plaintiff must demonstrate each of the four elements required by [] C.P.L.R. [§ 6212(a)]." DLJ

9

Mortg., 594 F. Supp. 2d at 320. "The remedy of attachment is recognized to be harsh and extraordinary; therefore, even if a plaintiff satisfies the statutory criteria, the issuance of this relief is discretionary, and the Court must exercise care in its application." Bank of China, 192 F. Supp. 2d at 186; see also DLJ Mortg., 594 F. Supp. 2d at 219 ("Because attachment is a harsh remedy, the[] statutory factors must be strictly construed in favor of those against whom attachment is sought." (quotations and citations omitted)); Musket Corp. 512 F. Supp. 2d at 160 ("Satisfaction of the statutory criteria * * * does not guarantee that a court will issue such a relief. Such relief is discretionary, and since attachment is a harsh remedy, the court must exercise care in its application." (quotations, alterations and citation omitted)).

A. Grounds for Attachment

Section 6201(3) of the CPLR provides, in relevant part, that "[a]n order of attachment may be granted in any action * * * where the plaintiff has demanded and would be entitled, in whole or in part, or in the alternative, to a money judgment against one or more defendants, when: * * * the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts[] * * *." "Upon the return of the motion to confirm, the plaintiff has the burden of establishing the grounds for the attachment[,]" Dayco Corp. v. Foreign Transactions Corp., 705 F.2d 38, 39 (2d Cir. 1983), by "prov[ing] both that the defendant (1) has assigned, disposed of, encumbered, or secreted property, or removed it from the state, or is about to do any of th[o]se acts; and (2) has acted or will act with the intent to defraud creditors or to frustrate the enforcement of a judgment that

might be rendered in plaintiff's favor." DLJ Mortg., 594 F. Supp. 2d at 319.

Plaintiff has presented sufficient "evidentiary facts," DLJ Mortg., 594 F. Supp. 2d at 319; Bank of China, 192 F. Supp. 2d at 188, e.g., defendants' bank records, demonstrating that defendants have intentionally taken steps to dispose of, transfer, or hide the funds they received from the Carter sale by making numerous large cash or certified check withdrawals, totaling approximately one hundred thousand dollars ($100,000.00), from the Alexandra/Olga account immediately following the Carter sale. Defendants have not offered any explanation for those withdrawals and, indeed, do not even address those withdrawals in any way in their affidavits in opposition to the motion to confirm. Accordingly, plaintiff has met its burden of establishing grounds for the attachment under Section 6201(3) of the CPLR.

B.   Probability of Success on the Merits

Plaintiff has also established that it has causes of action for money damages against all three (3) defendants, at least for unjust enrichment, and a probability of success on the merits of those claims against all of the defendants.

"Probability of success on the merits for purposes of an order of attachment requires that the moving party demonstrate that it is more likely than not that it will succeed on its claims and must show proof stronger than that required to make a prima facie case." Musket Corp., 512 F. Supp. 2d at 160; see also Silverman Partners, 687 F. Supp. 2d at 293 (accord); DLJ Mortg., 594 F. Supp. 2d at 319 ("To show a probability of success on the merits, the moving party must demonstrate by affidavit that it is more likely than not that it will succeed on its claims * * * [and] must make an evidentiary showing of proof stronger than that required to establish a prima

11

facie case * * *." (quotations and citations omitted)). "In assessing whether a plaintiff can show a probability of success on the merits, the court must give the plaintiff the benefit of all the legitimate inferences that can be drawn from the facts." Silverman Partners, 687 F. Supp. 2d at 293 (quotations and citation omitted); see also DLJ Mortg., 594 F. Supp. 2d at 319 (accord).

"To prevail on a claim for unjust enrichment in New York, a plaintiff must establish that (1) the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of New Jersey, Inc., 448 F.3d 573, 586 (2d Cir. 2006); see also Diesel Props S.r.l. v. Greystone Bus. Credit II LLC, 631 F.3d 42, 55 (2d Cir. 2011) ("In order to succeed on a claim for unjust enrichment under New York law, a plaintiff must prove that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover[.]" (quotations and citation omitted)). "[A] finding of unjust enrichment 'does not require the performance of any wrongful act by the one enriched.'" Counihan v. Allstate Ins. Co., 194 F.3d 357, 361 (2d Cir. 1999) (quoting Simonds v. Simonds, 45 N.Y.2d 233, 242, 408 N.Y.S.2d 359, 380 N.E.2d 189 (N.Y. 1978)); see also Nuss v. Sabad, 976 F. Supp. 2d 231, 253 (N.D.N.Y. 2013) ("It is not a prerequisite of an unjust enrichment claim that the one enriched commit a wrongful or unlawful act."); Cruz v. TD Bank, N.A., 855 F. Supp. 2d 157, 177 (S.D.N.Y. 2012) ("A plaintiff need not establish the performance of any wrongful act by the one enriched to prevail [on a claim for unjust enrichment under New York law] provided equity and good conscience requires return of the property.") "Indeed, innocent parties may frequently be unjustly enriched." Counihan, 194 F.3d at 361 (quotation, alterations and citation omitted); see also Alan B. Greenfield, M.D., P.C. v. Long Beach Imaging Holdings,

12

LLC, 114 A.D.3d 888, 981 N.Y.S.2d 135, 137 (N.Y. App. Div. 2014) (accord). Rather, "[w]hat is necessary is that the court identify a party who is holding property under such circumstances that in equity and good conscience he ought not to retain it." Counihan, 194 F.3d at 361 (quotations and citation omitted); see also Alan B. Greenfield, M.D., P.C., 114 A.D.3d 888, 981 N.Y.S.2d at 137 (accord).

"Whether a party is unjustly enriched is a legal conclusion reached through the application of principles of equity." Counihan, 194 F.3d at 361 (quotations and citation omitted); see also Brand v. Brand, 811 F.2d 74, 81 (2d Cir. 1987) ("A conclusion that one has been unjustly enriched is essentially a legal inference drawn from the circumstances surrounding the transfer of property and the relationship of the parties." (quotations and citation omitted)). "Unjust enrichment results when a person retains a benefit which, under the circumstances of the transfer and considering the relationship of the parties, it would be inequitable to retain." Counihan, 194 F.3d at 361. Moreover, "[u]njust enrichment applies, not only where a person receives money or property, but, also, where he otherwise receives a benefit * * * [e.g.,] where his debt is satisfied." Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC, 813 F. Supp. 2d 489, 534 (S.D.N.Y. 2011); see also Farina v. Bastianich, 116 A.D.3d 546, 984 N.Y.S.2d 46, 49 (N.Y. App. Div. 2014); Electric Ins. Co. v. Travelers Ins. Co., 124 A.D.2d 431, 432, 507 N.Y.S.2d 531 (N.Y. App. Div. 1986); Blue Cross of Cent. N.Y., Inc. v. Wheeler, 93 A.D.2d 995, 995, 461 N.Y.S.2d 624 (N.Y. App. Div. 1983). Thus, contrary to Alexandra's contention, she and Nicholas not only received "an apparent windfall" of over one hundred thousand dollars ($100,000.00) following the Carter sale, they also received a benefit in May 2008, when Bank United, plaintiff's assignor, used the proceeds from the Bank United Loan to

satisfy their indebtedness under the 2003 Mortgage and accompanying note in an amount in excess of two hundred ninety-five thousand dollars ($295,000.00), which they otherwise would have been obligated to pay themselves, or which would have encumbered the Premises at the time of the Carter sale, in exchange for Olga's execution of the Bank United Mortgage and Note that were ultimately assigned to plaintiff. See, e.g. Bank of Am., N.A. v. NMP Realty Abstract Servs., Ltd., No. 12-cv-797, 2014 WL 3585716, at * 5 (E.D.N.Y. Jan. 2, 2014) (finding that the defendant received "a substantial benefit" and "a substantial and unjustified windfall" at the expense of the plaintiff's predecessor in interest when the predecessor in interest paid off an earlier mortgage encumbering the defendant's property with the reasonable expectation that its mortgage to the defendant would be promptly recorded.) "[A] party who pays money, under a mistake of fact, to one who is not entitled to it, should, in equity and good conscience, be permitted to recover it back. . . ." Manufacturers Hanover Trust Co. v. Chemical Bank, 160 A.D.2d 113, 117, 559 N.Y.S.2d 704 (N.Y. App. Div. 1990); see also In re T.R. Acquisition Corp., 309 B.R. 830, 841 (S.D.N.Y. 2003) ("Under the principle of unjust enrichment, a party may not retain payments mistakenly made by another, to which it is not entitled."); Island Fed. Credit Union v. Smith, 60 A.D.3d 730, 732, 875 N.Y.S.2d 198 (N.Y. App. Div. 2009) (accord).

Plaintiff has sufficiently demonstrated that if defendants are permitted to retain the benefits they received from the Bank United Loan and Carter sale, they will be unjustly enriched, regardless of whether they committed any wrongdoing. "Equity would be offended if, due to the fortuity [of, presumably, the unidentified title company's failure to record the May 2008 Deed and Bank United Mortgage]," Counihan, 194 F.3d at 361, defendants retained the benefits they received, i.e., the satisfaction of their indebtedness under the 2003 Mortgage and the full amount

14

of the proceeds of the Carter sale, at plaintiff's expense. There is no reason why defendants should be allowed to escape restitution to plaintiff and reap the substantial and unjustified windfall they received solely because someone did not promptly record the Bank United Mortgage or May 2008 Deed. Accordingly, plaintiff has established a probability of success on their merits of, at least, their unjust enrichment claims against defendants in the full amount secured by the order of attachment, i.e., two hundred forty-five thousand four hundred ninety-eight dollars and thirty-eight cents. ($245,498.38).

C. Amount Demanded in Excess of Counterclaims

Since defendants have not asserted any counterclaims against plaintiff, the amount plaintiff demands from defendants exceeds all known counterclaims. Accordingly, plaintiff's motion to confirm the order of attachment is granted.

III. CONCLUSION

For the reasons set forth above, plaintiff's motion to confirm the order of attachment pursuant to Section 6211(b) of the CPLR is granted and the order of attachment dated August 1, 2014 is confirmed.

**SO ORDERED.**

s/ Sandra J. Feuerstein

Sandra J. Feuerstein
United States District Judge

Dated: October 28, 2014
Central Islip, New York